UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH COBB,

          Plaintiff,          Case No. 1:06-cv-773

v.          Honorable Robert J. Jonker

MARY K. BERGHUIS et al.,

          Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. On October 27, 2006, the Eastern District of Michigan transferred Plaintiff's action to this Court. This Court ordered service of Plaintiff's complaint on Defendants Mary K. Berghuis, R. Smith, S. Walton, and J. Farley on December 6, 2006. On April 5, 2007, Defendants Berghuis, Smith and Walton filed a motion, brief and supplement for summary judgment (docket ## 18-19, 21) based on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed an affidavit (docket #26) on or about May 7, 2007 in support of his complaint. Upon review, I recommend that Defendants' motion for summary judgment be granted based on Plaintiff's failure to exhaust his available administrative remedies.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

### **Facts**

Plaintiff is presently incarcerated at the Mound Correctional Facility, but the events giving rise to this action occurred while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF). In his *pro se* complaint, he sues the following LRF employees: Warden Mary Berghuis, Deputy Warden R. Smith, and Inspectors S. Walton and J. Farley.

On January 24, 2005, the Michigan Department of Corrections (MDOC) transferred Plaintiff to LRF. Plaintiff immediately informed LRF staff that he had been assaulted by another prisoner in 2001 while imprisoned at LRF. Plaintiff also wrote letters to several MDOC officials, including Defendants Smith, Walton and Farley, that his life was in danger at LRF but no one responded. On February 9, 2005, a prisoner assaulted Plaintiff, stabbing him in the left arm and hand, and stated that "[t]his was for his home boy Pat." (Compl. at 5; docket #1). After Plaintiff

received medical treatment from health care staff, he was placed in administrative segregation. Plaintiff alleges that he still has scar tissue on his arm and hand from the stabbing incident. (Compl. at 10.)

While in segregation, Plaintiff requested to speak with Defendant Walton. LRF staff denied Plaintiff's request. Thereafter, Plaintiff wrote letters to Defendants Walton and Smith. When he did not receive any response, Plaintiff filed a grievance on or about February 14, 2005[1] against Defendant Berghuis "based on [the] fact[] that she was the Warden and the supervisor of all employees at the Brooks Facility an[d] [t]hat he was being held without a security classification hearing or any kind of hearing to establish his future placement." (Compl. at 6.) LRF staff transferred Plaintiff to protective segregation on February 15, 2005. On February 16, 2005, Plaintiff filed another grievance on Defendants Berghuis, Smith, Walton and Farley, "stating that they all knew of the risk of harm to his person but refused to do anything about it, even after he had been injured." (Compl. at 6-7.) Plaintiff, however, did not hear anything regarding the status of his first and second grievances. On March 11, 2005, the MDOC transferred Plaintiff to the Saginaw Correctional Facility. On April 18, 2005, Plaintiff filed a third grievance which was identical to his second grievance, and he processed this grievance through the three-step grievance process,. While the MDOC denied Plaintiff's third grievance on the merits, the MDOC also denied it as untimely. (Ex. A, B & C to Compl.; docket #1.)

Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from assault by another prisoner when he had warned MDOC officials

---

[1] In his complaint, Plaintiff refers to this grievance as both the February 14 and February 15, 2005 grievance. For purposes of this complaint, we will give Plaintiff the benefit of the earlier date, February 14, for filing his grievance. (Compl. at 6 - 7.)

immediately upon his arrival to LRF. Plaintiff also alleges that Defendants housed him in administrative segregation without a proper hearing in violation of his Fourteenth Amendment rights. Plaintiff finally asserts several state law claims, including harassment and criminal recklessness. For relief, Plaintiff requests monetary damages and court costs.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets for the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a

---

[2] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

Defendants argue that Plaintiff only filed one grievance, on April 18, 2005, because they did not have a record of the other two February 14 and 16, 2005 grievances. The MDOC ultimately found the April 18, 2005 grievance was an untimely grievance. As stated above, the Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under Section 1983. 42 U.S.C. § 1997e(a).

The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement mandates "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances, and is a precondition to any suit challenging prison conditions. *Id.* at 2386-388. Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones,* 127 S. Ct. at 922-23. The Court in *Jones* also struck down the Sixth Circuit's total exhaustion

rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

In this case, Plaintiff attached copies of the Step I, II and III grievances for Grievance No. LRF 05-05-00515-28E against Defendants regarding his Eighth Amendment claim. (Ex. A, B & C to Compl.; docket #1.) He submitted the Step I grievance on April 18, 2005. In his complaint, Plaintiff also refers to grievances he submitted on February 14 and 16, 2005, respectively, but he did not attach copies of those grievances to his complaint. To support Plaintiff's burden under Federal Rule of Civil Procedure 56, Plaintiff submitted a verified complaint. (Compl. at 11.) Although statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, *see Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992), they must be based on personal knowledge. *See* Fed.R.Civ.P. 56(e) (affidavits opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *see also Weberg v. Franks,* 229 F.3d 514, 526 n.13 (6th Cir. 2000). Since Plaintiff's allegations were made with his personal knowledge, this Court may consider them on Defendants' motion for summary judgment. *See Weberg,* 229 F.3d at 526 n.13. While Plaintiff filed two grievances approximately five to seven days after his assault, he did not submit those grievances through the three-step grievance process. When Plaintiff did not receive a response at Step I for those grievances, he could have submitted another grievance at Step II within the applicable time

limits. Plaintiff did not attempt to follow those grievances onto Step II and Step III. A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); *see also Pearson v. Sapp*, No. 99-6182, 2000 WL 1459827, at *2 (6th Cir. Sept. 19, 2000) ("Even though Pearson did file an initial grievance at the institutional level, he failed to exhaust his available remedies by pursuing an appeal of the grievance rejection to the next levels as provided by the applicable Corrections Policy and Procedure.") Therefore, Plaintiff did not exhaust his February 14 or 16, 2005 grievances. As a result, his April 18, 2005 grievance, filed almost two months after the date of the incident, was properly rejected as being untimely. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶¶ R, U & X.

       The documentation supplied by Plaintiff conclusively shows that his lawsuit is barred by the PLRA's exhaustion requirement, as that statute has been interpreted by the United States Supreme Court. Pursuant to *Woodford,* Plaintiff failed to "properly" exhaust his administrative remedies because he did not comply with the procedural rules of the prison grievance policy when he filed his grievance more than two months after the alleged incident occurred. *Woodford,* 126 S. Ct. at 2386. The MDOC Policy Directive 03.02.130 ¶ X expressly establishes a five day time period for filing a grievance after attempting to resolve a grievable issue with staff. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II, and then Step III, within the applicable time limit after the response was due. MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶¶ R, DD, & HH. Under *Woodford,* the Court must observe the

procedural time limits established by the MDOC. *Woodford,* 126 S. Ct. at 2386. If the failure to exhaust is demonstrated on the face of the pleadings, that is sufficient to establish the affirmative defense under *Jones*. *Jones,* 127 S. Ct. at 921. In this case, Plaintiff's grievance was clearly untimely. Thus, I find that Defendants' motion for summary judgment should be granted based on Plaintiff's failure to exhaust his available administrative remedies.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment (docket #18) be granted, and judgment be entered in favor of Defendants on all of Plaintiff's claims.

Dated:  August 20, 2007                                         /s/ Hugh W. Brenneman, Jr
                                                                          HUGH W. BRENNEMAN, JR.
                                                                          United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).